IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BELL AEROSPACE SERVICES, INC.,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:09CV141-MHT** |
| **U.S. AERO SERVICES, INC., STEVE** | ) | |
| **MATHERLY, HARTWELL "WILLY"** | ) | |
| **WILSON, JOE BEN THOMAS,** | ) | |
| **MIKE HALL, RILDA BLAHA, SEAN** | ) | |
| **TAYLOR, TIMBERLY "MIMI" MOORE,** | ) | |
| **RON DONAHUE, AND MARK ROBISON,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW, **BELL AEROSPACE SERVICES, INC.** (hereinafter referred to as

"Bell Aero" or the "Plaintiff"), and amends its previously filed Complaint as follows:

## PARTIES AND JURISDICTION

1.      Bell Aero is a Delaware corporation with its principle place of business located in

Bedford, Texas.

2.      In 2005, Bell Aero acquired US Helicopter in Ozark, AL.  However, US Helicopter

is no longer a legal entity, but a division of Bell Aero.

3.      Individual Defendants, Hartwell "Willy" Wilson, Steve Matherly, Ron Donahue, Joe

Ben Thomas, Mike Hall, Timberly "Mimi" Moore, Sean Taylor, Mark Robison and Rilda Blaha, are

each citizens of the State of Alabama, residing within the geographical jurisdiction of the United

States District Court for the Southern Division of the Middle District of Alabama.

4.      Defendant US Aero Services, Inc. is a newly formed Alabama corporation, with its principal place of business in Enterprise, Alabama.

5.      This case is brought, in part, pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.  The Court has jurisdiction for all violations of the Computer Fraud and Abuse Act as well as supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's presented state law causes of action, including claims made under the Alabama Trade Secrets Act at § 8-27-1 et seq. *Code of Alabama* (1975).  Additionally, this Court has jurisdiction pursuant to 28 U.S.C. §1332 in that the matter in controversy is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court in accordance with 28 U.S.C. § 1391 (b) because many of the Defendants - if not all - reside in this district and all of the Defendants reside in this state. Substantially all of the events, acts, or omissions giving rise to the Plaintiff's claims occurred in this district.

## <u>NATURE OF THIS ACTION</u>

7.      This action arises from Defendants' unlawful and unauthorized misappropriation and tortuous acquisition of property belonging to Bell Aero, including confidential and proprietary information and trade secrets. Acting in concert, the Defendants, some of whom were employees of the Plaintiff at the time, undertook a plan, scheme, and design to obtain Plaintiff's confidential and proprietary information and trade secrets through unlawful, wrongful, subversive, clandestine and fraudulent means; depriving Plaintiff of its rights in this property and directly causing injury to the Plaintiff.  Defendants are now unlawfully utilizing Plaintiff's property for their own benefit in defiance to Plaintiff's legal rights, and fraudulently holding out Plaintiff's property as their own to

third parties, including agencies and departments of the federal government.

8.      In this action, Bell Aero seeks, among other things, all available equitable relief, including temporary, preliminary, and permanent injunctive relief ("Injunctive Relief") against all Defendants mandating the return of Plaintiff's property, and precluding all Defendants from engaging in any activity that would allow any Defendant the opportunity to utilize property stolen from Plaintiff.   Plaintiff further seeks all compensatory, statutory, punitive or other monetary damages, recovery and reimbursement available under the laws of the United States and the State of Alabama.

9.      Plaintiff's entitlement to the relief sought is shown by the Affidavits and evidentiary materials submitted, are each individually adopted and incorporated into the Complaint as if set out fully herein.

## FACTUAL AVERMENTS

## Confidentiality of Matters Involved

10.      In association with Bell Aero's purchase of US Helicopter in June 2005 each of all former employee Defendants signed and executed Confidentiality Agreements related to the work to be performed at the Ozark facility upon its acquisition by BellAero.  Each of these Defendants has signed and executed the Confidentiality Agreements which are marked and incorporated in Plaintiff's evidentiary submissions.

11.      The Confidentiality Agreements executed by the former employee Defendants each state, in part:

>      1.   The undersigned will not remove any Company records of any kind, including, but not limited to, Company equipment and Company Proprietary Information, or otherwise use or disclose

3000/1402                              3

Company Proprietary Information, unless provided herein or specifically agree [sic] otherwise in writing.

*\*\**

3.  For purposes of this Agreement, "Proprietary Information" shall mean information, material, or data proprietary to the Company or designated as Proprietary Information by the Company and not generally known by non-Company personnel which the undersigned may obtain knowledge of or access through or as a result of the undersigned's relationship with the Company, including information conceived, originated, discovered, or developed in whole or in part by the undersigned. Proprietary Information includes, but is not limited to, the following types of information, whether or not reduced to writing: concepts, software, designs, drawings, specifications, techniques, data, processes, procedures, know-how, marketing and development plans, customer names, and other information related to customers, price lists, pricing policies, and financial information. Proprietary Information also includes any information described above which the Company obtains from another party in which the Company treats as Proprietary, whether or not owned or developed by the Company. The undersigned agrees not to disclose such Proprietary Information to third parties without Company's written authorization.

*\*\**

4.  All documentation provided by Company and specified as Proprietary Information in any way shall belong exclusively to the Company and shall be returned to the Company upon request or a Certificate of Destruction provided. It is understood that the Company is not permitting the undersigned to use information of another entity, which is not generally available to the public unless the undersigned has first obtained written authorization from that entity. All Proprietary Information of the undersigned shall remain property of the undersigned.

*\*\**

7.  This Agreement shall be effective for as long as the undersigned performs work for the Company. Upon separation from the Company, the undersigned agrees not to use or disclose the

Company's Proprietary Information that has been disclosed under this Agreement and to return all copies to the Company. The provisions of this Agreement restricting the disclosure and use of Company Proprietary Information shall survive such termination and will apply to the undersigned's successors and assigns.

12.    Defendants Robison, Donahue & Blaha executed the "Acknowledgment of Compliance with the Textron Business Conduct Guidelines," a document confirming that U.S. Helicopter employees are obligated to comply with certain guidelines established by Textron.  In part, this Agreement provides:

I understand and agree that I have no expectation of privacy in any e-mail, program or document created using company computer systems and that even authorized personal use of the system is subject to monitoring and recording by the Company.  Unauthorized disclosure of Company Proprietary Information, or violation of law or Company policy is cause for discipline, up to and including dismissal and may also be subject to civil litigation and/or criminal prosecution.

(Copies of these Agreements are included within the evidentiary submissions).

13.    Defendants Taylor, Thomas, Donahue, Blaha, Hall, and Moore executed the "Acknowledgment of Compliance of Bell Helicopter Principles of a Great Company and the Textron Business Conduct Guidelines" which, in part, provides:

I understand that I have no expectation of privacy in any e-mail, program, or document created using company computer systems and that even authorized personal use of the system is subject to monitoring and recording by the Company.  Unauthorized disclosure of Company Proprietary Information, or violation of law or Company Policy is cause for discipline, up to and including dismissal and may be subject to civil litigation and/or criminal prosecution.

*** 

I acknowledge that I am aware of, and will comply with, Textron Information Technology Security Policies and Procedures, and overview of which was presented during the orientation session.

(Copies of these Agreements are included within the evidentiary submissions).

14.     Defendants Robison and Hall signed the "Confidential Information Agreement" which provides, in part:

>    Whatever we do in connection with designing, making, and selling our products that our competitors don't or can't do is called "Proprietary Information."  If it should become public knowledge or be disclosed to even one competitor, it would damage our business and, inevitably, threaten our jobs.  It is easy to understand why the Company must have a firm policy to protect such information and guard against disclosure.
>
>    Never discuss with any non-Company people any engineering, manufacturing, sales or financial aspects of our business.  Also, use reasonable care in talking about Company business with fellow employees in any public place.  Proprietary Information can [sic] unintentionally "leaked" in such situations.

(Copies of these Agreements are included within the evidentiary submissions).

15.     All seven of the Defendants who together left U.S. Helicopter on the same day were subject to the Company's "Employee Policy on Information Technology".  This Agreement, in part, provides the following:

>    **OWNERSHIP OF DATA**
>
>    All information created or processed by users on the Company's Computers is considered Company property and Textron shall own all rights to such information.  Users have no ownership or proprietary interests in any Data created or stored on Textron Computers, including personal information.  To the extent that anything in this Paragraph is contrary to the laws of any Country or other jurisdiction, those laws shall take precedence over the provisions in this Paragraph.
>
>                                ***
>
>    **COMPANY   CONFIDENTIAL   OR   PROPRIETARY INFORMATION**
>
>    The Company's Computers contain Data protected by copy right and

trade mark laws of the United States and other nations, trade secret information, materials subject to export controls, industrial security and other governmental regulations, and software and other proprietary information that are the exclusive property of Textron. Any unauthorized use, disclosure or transmission of such information or content is prohibited.  Users are required to comply with all applicable laws, agreements, and Company Policies before placing any information of a proprietary, confidential, or trade secret nature into Textron Computers.

***

### UNAPPROVED ELECTRONIC DEVICES

Users may not attach any personally owned electronic device to the Textron network without approval from TIS.  This includes a wireless access point, switch, hub, or router.  Similarly, no unapproved personally owned electronic device such as an iPod ®, MP3 Player, CD or DVD Player/Burner or any other memory or storage devices to be connected to a Textron computer.

(This policy is included within the evidentiary submissions).

16.    Plaintiff's computer system is secure.  The computer system is password protected with each employee being provided a specific user identification from the Company, as well as a unique password.  Specific measures must be undertaken to access the computer system remotely.  The Company's Internet and Intranet systems are distinct as they are electronically segregated.  The Company has wireless access; however, wireless access is limited and wireless users may not access the Company network.  Within the network, employee access is limited to areas relevant to each employee's job.  All employees receive IT compliance training each year.

### Defendant Wilson's Separation from the Company

17.    On June 12, 2008, Defendant Wilson was involuntarily terminated from U.S. Helicopter.

18.     Defendant Wilson admittedly and knowingly signed and back dated a supplier verification form belatedly approving an entity known as "SMT LLC," operated by Defendant Matherly, as an approved supplier of helicopter parts and components.

19.     Defendant Thomas was present when the improper verification form was executed by Defendants Wilson and Matherly, as well as former U.S. Helicopter employee Mackey Whitman. He was also terminated.  Whitman is now U.S. Aero's FAA Administrator

20.     Wilson's actions were a serious and material violation of Plaintiff's procurement policies and procedures.

## Discipline of Defendants Robison and Donahue

21.     In 2008, Robison and Donahue were implicated in an investigation of labor mischarging.  These charges, involving falsifying time records, were verified by the statements of other employees and through the investigation effort.

22.     Defendants Robison and Donahue were disciplined for their actions.

23.     The actions of Robison and Donahue were a violation of the Plaintiff's labor charging process.

## Creation of U.S. Aero and Resignation of Defendant Employees

24.     On September 16, 2008, Defendant Matherly and D. Bruce McLean incorporated U.S. Aero Services, Inc. with the stated purpose of refurbishing, upgrading, and selling aircraft.

25.     Defendant Matherly is the President of U.S. Aero.

26.     Defendant Wilson is the General Manager of U.S. Aero.

27.     On September 19, 2008, only three days after the incorporation of U.S. Aero, seven U.S. Helicopter employees resigned.  These employees included Defendants Joe Ben Thomas, Mike Hall, Rilda Blaha, Sean Taylor, Timberly "Mimi" Moore, Ron Donahue, and Mark Robison.

Subsequently, two additionally U.S. Helicopter employees, Jeremiah Armstrong and Robert Jolly, left U.S. Helicopter in October and December 2008, respectively.  The latter two employees are also employed by U.S. Aero Services, Inc.

28.     Of the seven employees who collectively resigned on September 19, 2008, five hold management positions at U.S. Aero.  Timberly "Mimi" Moore is the HR Manager; Rilda Blaha is responsible for Material Management; Mike Hall is Production Manager; Ron Donahue is Quality Manager; and Joe Ben Thomas is responsible for Sales.

29.     In October and December 2008, employees Robert Jolly and Jeremiah Armstrong also resigned from U.S. Helicopter.  Jolly is now Accounting Manager for U.S. Aero and Armstrong is now its IT Manager.

30.     U.S. Aero holds itself out as performing maintenance on and modernization and integration of aircraft, including the UH-1H and UH-1N helicopters.  U.S. Aero further describes its products and services as including avionics and mission equipment integration as well as component overhaul.  It also identifies as a goal the development of an improved UH-1H helicopter.

**Exposure of Defendants' Scheme**

31.     An investigation at U.S. Helicopter came on the heels of the resignations of Defendants Thomas, Hall, Blaha, Taylor, Moore, Donahue, and Robison following reports that certain confidential and protected U.S. Helicopter property, including wiring diagrams, drawings, photographs and other instructions were reported as missing.  These items included diagrams and prints for the "ST" program aircraft.

32.     This initial review prompted Plaintiff to engage the services of PricewaterhouseCoopers to perform a forensic analysis of computers available to the seven employees who originally resigned and now work for U.S. Aero.

33.     The PricewaterhouseCoopers forensic investigation revealed that in the days and hours preceding their resignation, the Defendant former employees accessed thousands of confidential computer files.  Access of large numbers of files occurred within minutes or seconds.  This rapid accessing is consistent with harvesting or copying material stored electronically on Plaintiff's computer network.

34.     Defendant Thomas, according to this analysis, accessed 716 such files on September 12, 2008 between 9:09 a.m. and 9:31 a.m.

35.     The materials accessed by Defendant Thomas on September 12, 2008 included technical publications used in the repair of aircraft, creation of Parts Lists, and in the generation of work proposals and bids.

36.     In addition, on September 18, 2008, Thomas accessed files beginning at 6:19 a.m. Frequently, such files were accessed within seconds or less of one another.

37.     The files accessed by Defendant Thomas on September 18, 2008 included technical publications, Work Instructions, Parts Lists, and Man Hour Records.

38.     Aircraft Work Instructions are step-by-step instructions regarding completion of individual tasks associated with a specific repair process.  These materials are generated not only to provide guidance regarding the completion of the noted tasks, but, further, to establish the quality processes required for compliance with certain contract work.  These materials are proprietary and protected.

39.     Parts Lists are lists of parts required to complete jobs.  Such lists are also used to identify materials which must be ordered from suppliers and vendors.  Finally, such items are used in order to prepare work proposals and bids.  These materials are, too, proprietary and protected.

40.     Similarly, Man Hour Reports establish the hours needed to complete various jobs, and

such information is critical to preparation of a contract proposal or bid.  Man Hour Reports are proprietary and protected.

41.     Work Instructions accessed by Defendant Thomas on September 19, 2008 included processes specific to the "ST" project.  These materials have no use except in connection with the process of refurbishing helicopters, particularly the "ST" aircraft.  Work Instructions for the "ST" program cannot be obtained from any other source.

42.     The "ST" aircraft is a specific twin-engine design of the Huey variety helicopter. Only Plaintiff produces this configuration.  Currently, pursuant to a contract, Plaintiff produces these aircraft for the United States Department of State.

43.     In addition, materials accessed by Defendant Thomas related to the "Huey II" helicopter which is a product specific to Bell, as well as other company projects.

44.     Plaintiff incurred substantial expense in accumulation and creation of the materials accessed by Defendant Thomas.

45.     Work Instructions accessed by Defendant Thomas are specifically marked on each page as "PROPRIETARY INFORMATION".

46.     In addition, the PricewaterhouseCoopers analysis reflects that Defendant Thomas accessed the computer network maintained by Bell Aerospace Services, Inc., which was, at the time, separate and distinct from that used by U.S. Helicopter.

47.     The PricewaterhouseCoopers forensic analysis shows that an external storage device was registered as being attached to Defendant Thomas's computer on September 19, 2008.

48.     Defendant Mike Hall also accessed U.S. Helicopter computer records on September 17, 18, and 19, 2008.  Hall accessed Parts Lists, which, again, are required to complete work, place orders for materials, and create work proposals or bids.

49.     External storage devices were registered as attached to Hall's computer on September 18 and 19, 2008.

50.     Defendant Blaha accessed various computer files on September 19, 2008 beginning at 6:01 a.m.

51.     The materials accessed by Blaha included vendor qualification materials or "Supplier Packets" which are materials or files used to accumulate and maintain information used to credential or otherwise approve material suppliers.  Such materials are confidential and protected.

52.     On that same date, Blaha accessed Plaintiff's approved Supplier Lists which Plaintiff does not share, considers proprietary, and maintains confidential.

53.     Defendant Blaha also accessed materials relating to a specific aircraft maintenance and refurbishment training package specific to Plaintiff.  Such training information is not a purchasing function and, therefore, is outside of Defendant Blaha's scope of work.

54.     In addition, Defendant Blaha accessed materials relating to Plaintiff's "Min-Max" process which is a U.S. Helicopter-generated process which encourages efficiency in operation.

55.     External storage was registered as being connected to Blaha's computer on September 19, 2008.  Indeed, Blaha accessed confidential files with external storage actually attached to her computer, and such took place on four nights within ten days of her departure.

56.     Defendant Taylor accessed protected materials beginning on September 10, 2008.

57.     The materials accessed by Defendant Taylor included Vendor Qualification documents, and, particularly, a form used in Plaintiff's quality system to qualify vendors for use of their products in building aircraft.

58.     Defendant Taylor also accessed Parts Lists.

59.     External storage is registered as being attached to the computer used by Taylor on

September 17, 2008.

60.     The computer used by Defendant Moore also reflects evidence of external storage being attached on September 17, 2008.

61.     Further, a computer available for use by Defendant Donahue has been shown to have registration of the application of external storage on September 17, 2008.

62.     According to Plaintiff's Information Technology Policies, only approved external storage devices, such as "flashdrives," may be connected to the Company's computer system.  The use of personal or unapproved devices is prohibited.

63.     At the time of their resignations, the Defendant former employees were asked to return all Company-owned property.  None of the seven returned such external storage devices.

**U.S. Aero's Stated Mission**

64.     As reflected above, the current employer of the Defendant former employees, U.S. Aero Services, Inc., holds itself out as providing aircraft sales and service, including but not limited to, helicopter maintenance and modernization, avionics and mission equipment integration, and component overhaul.

65.     Defendant U.S. Aero Services, Inc. has represented to the United States Government that it is an interested party in bidding on work relating to UH-1 helicopter maintenance, UH-1N refurbishment, and avionics upgrade.

**CLAIMS FOR RELIEF**

**First Claim for Relief**
**Violation of Computer Fraud and Abuse Act 18 U.S.C. § 1030**

66.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

67.     The Defendants' actions constitute violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030.

68.     The Defendants intentionally accessed Plaintiff's password protected computers and secure access restricted servers to improperly obtain Plaintiff's confidential and proprietary information and property, for an improper purpose, and intentionally exceeded the bounds of their authorization in obtaining information from the protected computers and secure server that was not in the furtherance of their job functions. Moreover, Defendants' access of Plaintiff's computer and server were without authorization, as the Defendant's authorization to access Plaintiff's computer system ended when Defendants began acting adverse to Plaintiff's interest.

69.     The Defendants' unauthorized access of Plaintiff's secure computers and servers to obtain protected confidential and proprietary information was done by Defendants for purposes of obtaining a commercial advantage and for Dependants' private financial gain.

70.     The Defendants intentionally and without authorization copied, converted, misappropriated and/or removed electronic data from Plaintiff's servers so as to be used in interstate commerce, depriving Plaintiff of its right to exclusive use of the confidential and proprietary information.  Defendants' actions have devalued the confidential and proprietary assets of the Plaintiff, and otherwise caused damage to Plaintiff.

71.     The Defendants obtained, and are using, confidential information and trade secrets unlawfully and Plaintiff has suffered damage and loss in excess of $5,000.00.

Wherefore, Plaintiff demands all equitable relief, monetary damages and other recovery and reimbursement allowable under the Computer Fraud and Abuse Act.

**Second Claim for Relief**
**Violation of the Alabama Trade Secrets Act**

72.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

73.     The Defendants' actions constitute willful and malicious violations of the Alabama Trade Secret Act, §8-27-1 *et seq, Code of Alabama* (1975).

74.     As detailed herein, the Defendants have willfully and maliciously misappropriated Plaintiff's confidential and proprietary trade secrets through improper means.

75.     Defendants' unauthorized and unlawful taking of Plaintiff's trade secrets have caused, and continue to cause actual damages to the Plaintiff.

Wherefore, Plaintiff demands all equitable relief, monetary damages, and other recovery and reimbursement allowable under the Alabama Trade Secrets Act, including those enumerated in §8-27-4 of the Act.

**Third Claim for Relief**
**Breach of Contract**

76.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

77.     The Defendants' actions constitute violations of their contractual Confidentiality Agreements and the policies, procedures, rules and regulations with which the Defendants were contractually obligated to comply.

78.     The Defendant's breach of these contractual agreements and obligations has caused, and will continue to cause, actual damage to the Plaintiff.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages, and

other recovery and reimbursement allowable as the result of the injury that has been caused by the actions of the Defendants, and to prevent further damage from being incurred in the future.

### Fourth Claim for Relief
### Conversion

79.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

80.     Defendants actions constitute conversion, and entitle Plaintiff to all remedies and recovery available in law and equity.

81.     US Aero and the individual Defendants have, and continue to wrongfully exercise possession, dominion, and control over proprietary and confidential information in direct defiance of  Bell Aero's right to exclusive possession and control.

82.     The individual Defendants have no right, title or lawful interest in the property converted, but have converted Bell Aero's property for their own use and beneficial enjoyment.  The Defendants have wrongfully taken, wrongfully retained, and wrongfully misapplied BellAero's confidential and proprietary information as described above, causing damage to the Plaintiff.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages and other recovery allowable as the result of the injury that has been caused by the actions of the Defendants, and to prevent further damage from being incurred in the future.

### Fifth Claim for Relief
### Theft of Intellectual Property

83.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

3000/1402                                          16

84.     Through artifice, deception, plan, scheme, and collusion, the Defendants have unlawfully and feloniously stolen property rightfully belonging to Plaintiff.

85.     The Defendants continue to permanently deprive Bell Aero of the exclusive use and benefit of its confidential and proprietary information and trade secrets.

86.      The Defendants have and continue, without right or authorization, to utilize property belonging to Bell Aero for their own benefit, in defiance of Bell Aero's legal ownership and rights, and Defendants' actions have caused and continue to cause Plaintiff actual damage.

87.     The actions of the Defendants are unlawful and entitle Plaintiff to recovery under both the common law, and pursuant to §6-5-370, *Code of Alabama* (1975).

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages, and other recovery allowable as the result of the injury that has been caused by the actions of the Defendants, and to prevent further damage from being incurred in the future.


## Sixth Claim for Relief
### Trespass of Chattels

88.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

89.     The actions of the Defendants as detailed herein constitute a trespass to the chattels of the Plaintiff.

90.     The information unlawfully taken from the Plaintiff by the Defendants is the personal property of the Plaintiff.  The Defendants have intentionally deprived the Plaintiff of the exclusive use of the property, impaired the quality and value of the property, and dispossessed the Plaintiff of possession of its property.

91.     Defendants' interference with Plaintiff's exclusive right to possession of the property taken has and continues to cause actual damage to the Plaintiff.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages and other recovery allowable as the result of for the injury that has been caused by the actions of the Defendants, and to prevent further damage from being incurred in the future.

### Seventh Claim for Relief
### Fraud and Suppression

92.     Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

93.     The Defendants made material misrepresentations, and suppressed material information they were under a duty to disclose, and in so doing caused Plaintiff to take actions and abstain from taking actions contrary to the course of conduct Plaintiff would have undertaken had Defendants provided truthful information.

94.     The Defendants deceptively accessed and absconded with Plaintiffs confidential and proprietary information and trade secrets, in direct violation of Plaintiff's policies, procedures, rules, regulations and the clear and unambiguous terms of the Confidentiality Agreements executed by Defendants. The Defendants, upon resignation, further misrepresented that they had returned all property belonging to Plaintiff, and suppressed the fact that they had not done so.

95.     Further, employee Defendants agreed to take employment and enter into competition with the Plaintiff prior to making unauthorized access of Plaintiff's secure server.  The Defendants in Plaintiffs employ as of September 2008 owed Plaintiff a fiduciary duty, but did not disclose that they had agreed to go into competition with Plaintiff. These Defendants instead remained in Plaintiff's employ in order to act to the detriment of Plaintiff by improperly misappropriating the

property and assets of the Plaintiff, including confidential and proprietary information, and trade secrets. These Defendants breached the duty owed to Plaintiff by not disclosing the fact that they had accepted employment to compete with Plaintiff, and that they were impermissibly acquiring Plaintiff's property in order to do so.

96.    Had Defendants disclosed there agreements to go into competition with Plaintiff, their means of access to Plaintiff's confidential and proprietary information would have been terminated.

97.    As the facts specifically demonstrate, the individual Defendants, acting individually and in concert, fraudulently misappropriated proprietary information and assets.

98.    In reliance on, and as the result of, the fraudulent conduct of Defendants, Plaintiff has been, and will continue in the future, to incur damages as shown herein.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages and other recovery allowable as the result of the injury that has been caused by the actions of the Defendants, and to prevent further damage from being incurred in the future.


**Eighth Claim for Relief**
**Unjust Enrichment**

99.    Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

100.    The Defendants have been, and will continue to be, unjustly enriched from their utilization of the wrongfully acquired property of the Plaintiff.

101.    The property of the Plaintiff, including confidential and proprietary information, unlawfully taken by Defendants is necessary for the very work the Defendants are in business to

perform.  Therefore, in equity and good conscience all monies obtained by Defendants rightfully

belongs to Plaintiff.  Additionally, any monies paid to the Defendants is the result of Defendants

fraudulently representing that the property of the Plaintiff is their own.

102.    The Defendants are being unduly enriched by the utilization of property rightfully

belonging to the Plaintiff.

103.    Plaintiff is entitled to these monies, and seeks a constructive trust

preventing Defendants from distributing or otherwise disposing of these monies.

Wherefore, Plaintiff demands all equitable relief, including imposition of a constructive trust,

and all compensatory and punitive damages and other recovery allowable as the result of the actions

of the Defendants, and necessary to prevent further damage from being incurred in the future.

### Ninth Claim for Relief
### Breach of Fiduciary Duty

104.    Bell Aero incorporates and re-alleges the allegations contained in the foregoing

paragraphs as though they were fully set forth herein.

105.    As employees of Plaintiff, Defendants owed Plaintiff a fiduciary duty, including a

duty of loyalty, a duty to act in Plaintiff's best interest while in Plaintiff's employ, to act in good

faith, and to use the authority and access bestowed to them as the result of their employment

relationship only to serve the ends and best interests of the Plaintiff.  The Defendants further

owed Plaintiff a duty not to act adverse to the Plaintiff's interest, or otherwise take actions

detrimental to the interests of the Plaintiff.

106.    Defendants' actions as herein alleged breached the fiduciary duty which they

owed to Plaintiff arising from the confidential relationship of employee and employer, and have

caused damage to the Plaintiff.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages and other recovery allowable as the result of the actions of the Defendants, and necessary to prevent further damage from being incurred in the future.

**Tenth Claim for Relief**
**Conspiracy**

107.    Bell Aero incorporates and re-alleges the allegations contained in the foregoing paragraphs as though they were fully set forth herein.

108.    Acting in concert, the Defendants undertook an intentional plan, scheme and design to injury the Plaintiff through the tortuous, unlawful, and wrongful actions herein alleged.

109.    The Defendants jointly acted through unlawful means to bring about the unlawful ends herein described, and thereby caused damage to the Plaintiff in excess of any injury that any one Defendant acting alone could have accomplished.

Wherefore, Plaintiff demands all equitable relief, compensatory and punitive damages and other recovery allowable as the result of the actions of the Defendants, and necessary to prevent further damage from being incurred in the future.

**Eleventh Claim for Relief**
**Permanent Injunction**

110.    Bell Aero incorporates and re-alleges contained in the foregoing paragraphs as though they were fully set forth herein.

111.    Bell Aero requests this Court to issue permanent injunctive relief in its favor, to prevent and foreclose the irreparable damage, loss, and injury Plaintiff will incur if Defendants, together or separately, utilize the Plaintiff's property which was wrongfully acquired and misappropriated by the Defendants.

112.    As support for this relief, the Plaintiff adopts and incorporates, as if fully set forth

herein, the factual averments and legal argument presented in its Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

113.    Plaintiff requests this Court to enter a permanent injunction consistent with the relief requested in Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, including but not limited to, enjoining US Aero, and any agent, employee, or representative of US Aero, and the individual Defendants, from dispersing, disseminating, publicizing, publishing, transferring, transmitting, misappropriating, or otherwise utilizing information, data, materials, or items removed from Bell Aero, and further enjoining all Defendants individually or together, from undertaking to, or having any association with any individual or entity that undertakes to, provide a bid or engage in the bidding process associated with any aircraft, work, contract, program or project, associated with or included in the Plaintiff's documents and other property unlawfully acquired by Defendants; including but not limited the ST project; or otherwise undertake any action in the furtherance of obtaining or performing any work, contract, or project that would be assisted by the information taken from Plaintiff, or in any connection with any aircraft reflected or described, in whole or in part, in any of the information taken from Plaintiff.

## Amended Allegations and Complaint

114.    In addition to the foregoing, Plaintiff specifically asserts that jurisdiction exists in this Court pursuant to 28 U.S.C. §1332, as there is complete diversity of citizenship amongst the parties and Plaintiff can satisfy the $75,000.00 amount in controversy jurisdictional threshold, exclusive of interests and costs.

115.    As to the former point, Bell Aero is a Delaware corporation with its principle place of business located in Bedford, Texas.  In 2005, Bell Aero acquired US Helicopter in Ozark, AL. However, US Helicopter is no longer a legal entity, but a division of Bell Aero.

116.    Individual Defendants, Hartwell "Willy" Wilson, Steve Matherly, Ron Donahue, Joe Ben Thomas, Mike Hall, Timberly "Mimi" Moore, Sean Taylor, Mark Robison and Rilda Blaha, are each citizens of the State of Alabama, residing within the geographical jurisdiction of the United States District Court for the Southern Division of the Middle District of Alabama.  Defendant US Aero Services, Inc. is a newly formed Alabama corporation, with its principal place of business in Enterprise, Alabama.  Thus, there is complete diversity among the parties pursuant to 28 U.S.C. §1332.

117.    Furthermore, as pled, this action is of a civil nature at law whereby the amount in controversy is in excess of $75,000, exclusive of interest and costs.  On this point, Plaintiff alleges claims for violation of the CFAA, the Alabama Trade Secrets Act, §8-27-1 et seq, Code of Alabama (1975), breach of contract, conversion, breach of fiduciary duty, trespass of chattels, conversion, theft of intellectual property, fraud and suppression, unjust enrichment, conspiracy, and for injunctive relief in the form of a permanent injunction.  (See Plaintiff's Complaint).

118.    Plaintiff's alleged damages include actual loss caused by the misappropriation and the unjust enrichment caused by the misappropriation that is not taken into account in calculating actual loss.  Furthermore, Plaintiff has suffered monetary damages as a result of the misappropriation and loss of this exclusive, confidential information since these materials were gathered and developed at Bell Aero's costs and expense.

119.    Plaintiff has also alleged actual damages for its trade secrets claim relating to monetary amounts expended during the investigative phase and ultimate discovery of the Defendants' improper conduct; indeed, Plaintiff has expended thousands of dollars just in relation to determining what information has been copied or deleted from the company's computers by Defendants.

120.    Beyond its alleged compensatory damages, Plaintiff has also asserted claims, including a count for fraud, seeking: (1) exemplary ("punitive") damages, and (2) statutorily permitted attorneys fees, in light of the Defendants' willful and malicious misappropriation of its confidential information and property.

121.    As such, there is complete diversity of citizenship amongst the parties pursuant to 28 U.S.C. §1332.  Furthermore, as pled, this action is of a civil nature at law whereby the amount in controversy is in excess of $75,000, exclusive of interest and costs.

**WHEREFORE**, Plaintiff demands judgment, including compensatory damages, punitive damages, recovery of permitted costs and expenses, and equitable relief as described above and as stated in its original Complaint.

Respectfully submitted,


s/H. Cannon Lawley
H. Cannon Lawley
Walter J. Price, III
Attorneys for Plaintiff
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South
Birmingham, Alabama 35223
205-251-1193
205-251-1256
hcl@hfsllp.com
wjp@hfsllp.com

## JURY DEMAND

Plaintiff demands trial by jury on those claims allowing for a jury trial.

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court and service will be perfected electronically upon the following on this the __22nd__ day of __April__, 2009:

Dorman Walker
Louis M. Calligas
Balch & Bingham, LLP
P.O. Box 78
Montgomery, AL 36101

Will Hill Tankersley
Balch & Bingham, LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203-4346

s/H. Cannon Lawley
Of Counsel

3000/1402

25