IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| BELL AEROSPACE SERVICES, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:09cv141-MHT |
| | ) | (WO) |
| U.S. AERO SERVICES, INC., STEVE MATHERLY, HARTWELL "WILLY" WILSON, JOE BEN THOMAS, MIKE HALL, RILDA BLAHA, SEAN TAYLOR, TIMBERLY "MIMI" MOORE, RON DONAHUE, and MARK ROBISON, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiff Bell Aerospace Services, Inc. filed this
lawsuit claiming that defendants U.S. Aero Services,
Inc., two U.S. Aero officers, and seven other U.S. Aero
employees violated federal and Alabama law by acquiring
Bell Aerospace's confidential and proprietary information
and trade secrets without authorization. Bell Aerospace
charges the defendants with violating the Computer Fraud
and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Alabama

Trade Secrets Act (ATSA), 1975 Ala. Code §§ 8-27-1 to -6. The company also asserts the following six Alabama claims against the defendants: theft of intellectual property, unjust enrichment, fraud, breach of fiduciary duty, conversion, and breach of contract. Jurisdiction over all claims rests on 28 U.S.C. § 1332 (diversity).

This case is currently before the court on the defendants' motion for summary judgment. Summary judgment will be granted in part and denied in part.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In deciding whether summary judgment should be granted, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in favor of that party. <u>Matsushita Elec.</u> <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Bell Aerospace is in the business of providing helicopter maintenance support to both government and non-government agencies in Ozark, Alabama. In June 2008, Vice President of Operations Hartwell Wilson, along with the President and the General Manager, was fired.

In late August 2008, Steve Matherly (who had sold helicopters and parts to Bell Aerospace) and Wilson founded U.S. Aero, with Matherly as President and Wilson as General Manager. U.S. Aero performs work similar to that done by Bell Aerospace; it has 20 full-time employees and is eligible for government contracts set aside specifically for small businesses. U.S. Aero's employees include, in addition to Wilson, seven former employees of Bell Aerospace: Joe Thomas, Mike Hall, Sean

Taylor, Ron Donahue, Timberly Moore, Mark Robison, and Rilda Blaha.  While at Bell Aerospace, they each had been permitted to use the company's computers and each had had an individualized login user-name and password to access the company's servers and computer network.  The events surrounding the departure of these seven employees are at the heart of this litigation.

In early September 2008, Wilson contacted four Bell Aerospace employees (Thomas, Hall, Taylor, and Donahue) about joining U.S. Aero as its first employees.  Donahue, in turn, informed two more Bell Aerospace employees (Moore and Robison) about the new company, and they each spoke with Wilson about the new opportunity.  Soon after, Wilson and Matherly met with these six employees, made them offers of employment from U.S. Aero, asking them to begin work on September 24.  On September 18, Robison and Moore resigned from Bell Aerospace, and Thomas, Hall, Taylor, and Donahue resigned the next day.  On September 19, the seventh Bell Aerospace employee, Blaha, learned about the

4

new company and was offered a position after speaking to Wilson; she immediately resigned from Bell Aerospace. Wilson and these other employees were not subject to any non-compete agreements with Bell Aerospace.

Faced with the surprise resignation of seven employees, Bell Aerospace chose to escort all those who quit from the Ozark facility, permanently ending their employment with the company. Other Bell Aerospace employees then reported that hard copies of the company's production materials, including a package of drawings, were missing. As a result of these reports, the company hired computer-forensics experts to investigate what, if anything, was taken or copied by the seven former employees. Wilson and the seven other employees had previously signed confidentiality agreements with Bell Aerospace promising "not [to] remove any Company records of any kind ... or otherwise use or disclose Company Proprietary information, [except] ... as required in the performance of [his/her] Company job function." Pl.

Ex. 11.    In addition, Wilson told some of the other former employees that "they were not to acquire, provide, bring any data, regardless of what it was, when they left employment at Bell Aerospace." Wilson Dep. 170.

Bell Aerospace then filed this lawsuit against U.S. Aero, two of its officers (Matherly and Wilson), and seven of its other employees (Thomas, Hall, Taylor, Donahue, Moore, Robison, and Blaha).

## III. DISCUSSION

Bell Aerospace charges U.S. Aero, Matherly, Wilson, and the seven other former Bell Aerospace employees with various claims under both federal and Alabama law.  All of these claims are rooted in the allegation that the seven employees took and copied Bell Aerospace protectable information and other materials and used it in their new employment with U.S. Aero.

Bell Aerospace asserts its CFAA claim against all defendants.  The CFAA is designed for the investigation and prosecution of hacking crimes.  A.V. ex rel. Vanderhye v. iParadigms, LLC, 562 F.3d 630, 645 (4th Cir. 2009). While primarily a criminal statute, it allows for a private cause of action for  "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA]." 18 U.S.C. § 1030(g).  Bell Aerospace claims that the defendants violated the CFAA by accessing its computers "without authorization" or in "excess" of their authority and, "as a result of such conduct, cause[d] damage and loss."  18 U.S.C. § 1030(a)(5).

Without Authorization:  For Bell Aerospace's CFAA claims to survive summary judgment, it must show that the defendants' access to its protected computers occurred "without authorization."  18 U.S.C. §§  1030(a)(2) and (4).  "[A]n employer gives an employee 'authorization' to access a company computer when the employer gives the

employee permission to use it." <u>LVRC Holdings LLC v.</u>
<u>Brekka</u>, 581 F.3d 1127, 1133 (9th Cir. 2009). The seven
former Bell Aerospace accused of accessing the company
computers without authorization were each employed at the
company while accessing its computers and each had
permission to do so; therefore, each had "authorization"
to access the computers and the materials found on its
server.

Bell Aerospace argues that, whenever an employee
breaches her fiduciary duty of loyalty to an employer in
accessing documents on the employer's protected computer,
that employee acts "without authorization." The company
reasons, as did the Seventh Circuit Court of Appeals in
<u>International Airport Centers, LLC v. Citrin</u>, 440 F.3d
418, 420 (7th Cir. 2006), that an employee's
"authorization to access the [protected computer]
terminate[s] when, having already engaged in misconduct
and decided to quit ... , he ... violat[es] [] the duty of
loyalty that agency law imposes on an employee." This

court does not agree with the Seventh Circuit's broad interpretation.

First, this reasoning ignores the plain language of the statute. The CFAA differentiates between "without authority" and "exceeds authorized access." 18 U.S.C. § 1030(a)(2) and (4). A person who accesses a protected computer "without authority" does so with no permission at all, like hackers, whom this statute was originally written to ward against; whereas, a person who "[e]xceeds authorized access" is one who "accesses a computer with authorization and ... use[es] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Therefore, as the Ninth Circuit Court of Appeals has aptly observed in Brekka, a person who "exceeds authorized access, ... accesses information on the computer that the person is not entitled to access." 581 F.3d at 1133. Bell Aerospace's reasoning would improperly remove all

distinction between "without authorization" and "exceeds authorization."

Second, this reading of the CFAA is buoyed by the nature of the statute itself.  The CFAA is primarily a criminal statute, and when a statute has "both criminal and noncriminal applications," courts must "interpret the statute consistently."   Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004).  It is imperative when dealing with a criminal statute that "defendants are on notice as to which acts are criminal."   Brekka, 581 F.3d at 1135.  Thus, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," Rewis v. United States, 401 U.S. 808, 812 (1971), which "requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government," Brekka, 581 F.3d at 1135.  While the plain language of the CFAA dictates reading "without authorization" to mean "without permission or access,"  a

finding of ambiguity would necessarily lead to the same result.

Because the seven employees who resigned had valid permission to utilize the Bell Aerospace computers, they were acting with authorization when they accessed the computers up until the time they each were escorted from the facility.

Exceeds Authorization: "Exceeds authorized access" should not be confused with exceeds authorized use. See Diamond Power Intern., Inc. v. Davidson, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007) (Story, J.). Therefore, at issue here is only whether the former Bell Aerospace employees exceeded their authorized access, not whether they exceeded their authorized use.

There is no evidence in the record to suggest that these employees "exceed[ed] authorized access." § 1030(a)(2) and (4); indeed, the employees were "permitted access to [Bell Aero's] network and any information on that network" under their individual user

11

accounts. <u>Black & Decker (US), Inc</u>, 568 F. Supp. 2d 929, 935 (W.D. Tenn. 2008) (Breen, J.). Because it appears that the CFAA is concerned with access, not use, whether these employees did not have permission to copy or subsequently misuse the accessed data by sharing them is another matter that may be circumscribed by a different statute and is not at issue here.

Because the seven employees who resigned had valid permission to utilize the Bell Aerospace computers while employed at the company and because there is no evidence that they exceeded that authorization, Bell Aerospace's CFAA claim, to the extent it is based on a theory of "exceeds authorization," must fail.

### B.

Bell Aerospace asserts its ATSA claim against all defendants. The ATSA protects against the misappropriation of "trade secrets," which is information that:

"a. Is used or intended for use in a trade or business;

"b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;

"c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;

"d. Cannot be readily ascertained or derived from publicly available information;

"e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and

"f. Has significant economic value."

1975 Ala. Code § 8-27-2(1). Bell Aerospace has the burden of establishing each element for the information in question to be considered a trade secret. Public Systems, Inc. v. Towry, 587 So. 2d 969, 971 (Ala. 1991). Thus, in order to hold any defendant liable for misappropriating trade secrets, Bell Aerospace must first establish that it maintained trade secrets, as defined in the ATSA, and that those secrets are at issue in this case.

13

Bell Aerospace never makes clear what trade secrets
it possesses or which of these secrets were taken by a
defendant.  Its brief is opaque, contending that its
former employees stole work instructions, customer contact
lists, and certain forms that are "trade secrets."  Pl.'s
Resp. Mot. Summ. J. 41.  However, the company provides no
further guidance as to how these items are trade secrets
under the ATSA or even what information is contained in
these documents.[1]

Admittedly, the court is provided with one piece of
hard evidence--the work instructions allegedly copied by

---

1. For example, the customer contact-lists Bell
Aerospace mentions as a trade secret in its brief appear,
from the evidence, to refer to Moore's and Taylor's
Microsoft Outlook personal contact-lists that they
allegedly copied from their Bell Aerospace computers.
These personal e-mail addresses are different from
"customer contact lists" that often contain customers'
buying patterns and other proprietary information.  See,
e.g., Movie Gallery US, LLC v. Greenshields, 648
F. Supp. 2d 1252, 1264 (M.D. Ala. 2009) (Thompson, J.)
(explaining that protected contact lists include specific
information about customers, for example, their buying
habits) (quotation omitted).  Bell Aerospace does not
provide the court with any guidance, however, as to what
it means by "customer contact lists."

14

Thomas, Pl. Ex. 6--but there is no explanation as to the significance of this particular document or why the information is not generally known in the trade or business, why it cannot be readily ascertained or derived from publicly available information, or how it is the subject of efforts to maintain its secrecy.[2]  Just because Bell Aerospace calls certain information a "trade secret" does not make it so under the ATSA.

As this court has recently made clear when considering a summary-judgment motion, it is under no obligation to comb through hundreds of pages of depositions and evidence to help a party meet its burden under the law.  Edwards v. Hyundai Motor Mfg. Alabama, LLC, _____ F. Supp. 2d _____, _____, 2009 WL 1257164, at *3 (M.D. Ala. 2009) (Thompson, J.).  Because Bell Aerospace does not meaningfully attempt

---

2.  Bell Aerospace also provides the court with several hundreds of pages of expert reports that list which company files were accessed by its former employees (as well as other employees who are not parties to this lawsuit).  While the company acknowledges that not all of this information is proprietary, it makes no effort to highlight which of the accessed documents are considered trade secrets under the ATSA's definition of the term.

to explain what trade secrets, under the law, it maintained or to explain which of these secrets its former employees misappropriated, its ATSA claim must fail.[3]

## C.

Bell Aerospace asserts a theft-of-intellectual-property claim, based on 1975 Ala. Code § 6-5-370, against all defendants. Section 6-5-370 states that, "For any injury, either to person or property, amounting to a felony, a civil action may be commenced by the party injured without prosecution of the offender." Bell Aerospace's reliance on the provision is mistaken: "Section 6-5-370 does not create a cause of action; rather, it merely allows a plaintiff to commence a civil action even if the plaintiff does not pursue criminal

---

3. Even if Bell Aerospace were to establish that the work instructions copied from Thomas's computer was a "trade secret" under the ATSA, the record provides no evidence that Thomas misappropriated these secrets or that he used the information from the work instructions while employed by U.S. Aero. See 1975 Ala. Code § 8-27-3.

16

prosecution of the defendant." <u>Lewis v. Fraunfelder</u>, 796 So. 2d 1067, 1070 (Ala. 2000); <u>see also</u> <u>Preskitt v. Lyons</u>, 865 So. 2d 424, 429 (Ala. 2003) ("§ 6-5-370 only eliminates an obstacle for plaintiffs with a valid cause of action; it does not <u>create a civil cause of action for any injury that amounts to a felony.</u>") (emphasis added); <u>Thomas v. McKee</u>, 205 F. Supp. 2d 1275, 1291 (M.D. Ala. 2002) (De Ment, J.) (Section 6-5-370 "was merely intended to abrogate the common law rule of suspension which precluded civil damages claims in these circumstances absent the prosecution of the felonious offender."). Therefore, § 6-5-370 does not provide a means for Bell Aerospace to bring a claim for theft of intellectual property. Bell Aerospace's theft-of-intellectual-property claim must fail.[4]

---

4. Even if this claim were permitted by Alabama statute, it is unclear how this charge differs from Bell Aerospace's ATSA and conversion claims. Moreover, Bell Aerospace provides the court with no guidance as to what "felony" U.S. Aero and its employees committed or how it defines "intellectual property."

Bell Aerospace asserts an unjust-enrichment claim against all defendants. To prevail on this claim, the company must show that one or more defendants "hold[] money which, in equity and good conscience, belongs to" Bell Aerospace or "hold[] money which was improperly paid to [them] because of mistake or fraud," <u>Mantiply v. Mantiply</u>, 951 So. 2d 638, 654 (Ala. 2006) (citations omitted); in other words, Bell Aerospace must show that a defendant holds its money unjustly. "[T]he retention of a benefit is unjust if "(1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." <u>Id</u>. at 654-55 (citations omitted).

There is no evidence that U.S. Aero or any its employees who worked for Bell Aerospace has any money belonging to Bell Aerospace or was paid any money because

of mistake or fraud.  Furthermore, there is no evidence that U.S. Aero has lost any business to U.S. Aero, that any employee continued to work at Bell Aerospace after accepting employment from U.S. Aero, or that Bell Aerospace's proprietary materials are in use or present at U.S. Aero.  Because there is no evidence of unjust enrichment, Bell Aerospace's unjust-enrichment claim must fail.

## E.

Bell Aerospace asserts two kinds of fraud against U.S. Aero and the seven employees who resigned: misrepresentation and suppression.[5]  The company bases the fraud theories on the allegation that the seven employees breached their confidentiality agreements and took protected items from the company upon their resignations.

_____

5. Bell Aerospace conceded in its response to the summary-judgment motion that its fraud, breach-of-fiduciary-duty, breach-of-contract claims are meritless to the extent they are against Matherly and Wilson.

Misrepresentation:    In Alabama, a successful misrepresentation claim must show that the offending party made (1) a false representation; (2) concerning a material existing fact; (3) relied upon by the plaintiff; (4) who must be damaged as a proximate result.    Earnest v. Pritchett-Moore, Inc., 401 So. 2d 752, 754 (Ala. 1981).

Bell Aerospace alleges that the seven former employees promised not to violate their confidentiality agreements and that they would not "take/use any protected items for a competing business venture."  Pl.'s Resp. Mot. Summ. J. 51.  "The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future ... is when the evidence shows that, at the time of the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive." Purcell Co., Inc. v. Spriggs Enterprises, Inc., 431 So. 2d 515, 519 (Ala. 1983).  The promise Bell Aerospace had from the seven employees was

part of a contract, and "failure to perform, alone, is not evidence of intent not to perform at the time the promise was made." Id. There is no evidence that at the time the employees signed their confidentiality agreements they intended to deceive Bell Aerospace. Bell Aerospace, therefore, cannot recover on a theory of misrepresentation.

Suppression: A suppression claim requires that (1) the employees had a duty to disclose material facts; (2) they concealed or failed to disclose those facts; (3) the concealment or failure to disclose induced Bell Aerospace to act or to refrain from acting; and (4) the employees' actions resulted in harm to Bell Aerospace. See Bethel v. Thorn, 757 So. 2d 1154, 1162 (Ala. 1999). A duty to disclose may be created either by a "confidential relations[hip]" between the parties, or from the "particular circumstances of the case." 1975 Ala. Code § 6-5-102.

Bell Aerospace first argues that, under their confidentiality agreements, the seven employees had a duty

21

to disclose whether they had improperly copied documents. Assuming the seven employees had a duty to disclose as asserted by Bell Aerospace, the company's suppression theory still fails. The suppression theory is, at its heart, a twist on the misrepresentation argument. Bell Aerospace argues that the employees fraudulently suppressed their intention to breach the confidentiality agreements and that the company relied on this suppression by allowing them access to its proprietary information. Because there is no evidence, as stated previously, that at the time the employees signed their confidentiality agreements they intended not to comply with the agreements, there is also no evidence that they suppressed such an intent at that time.

Bell Aerospace further argues that it was "forced to initiate an investigation and expend ample time and expense to discover the taking of certain materials by Defendants prior to their mass resignations." Pl.'s Resp. Mot. Summ. J. 51. However, Bell Aerospace's general manager testified

that the company began its investigation because employees reported hard copies of documents missing and because seven employees resigned within a short time of one another. The investigation was begun because of fear of missing documents, not because of what the employees said or did not say at the time they signed the confidentiality agreements. In short, there is no evidence that, even if some of the employees eventually breached their agreements, Bell Aerospace was induced to act (or refrained from acting) because of any suppression. See Bethel, 757 So. 2d at 1162.

Bell Aerospace further argues that the seven employees were required to inform the company of their decision to work for U.S. Aero. There is nothing in the record to support a finding that the employees were under an obligation to report to Bell Aerospace that a competitor had offered them employment. The employees were not subject to a non-compete agreement; each resigned from Bell Aerospace prior to beginning employment with U.S. Aero; and

each promptly informed Bell Aerospace that he or she was resigning and then left before beginning with U.S. Aero.

Bell Aerospace's fraud claim fails on all asserted theories.

## F.

Bell Aerospace asserts it breach-of-fiduciary-duty claim, which "sounds in tort," Brooks v. Hill, 717 So. 2d 759, 764 (Ala. 1998), against U.S. Aero and the seven employees who resigned from Bell Aerospace.[6]  It is the fiduciary duty of an employee "to act, in all circumstances, with due regard for the interests of his [employer], and to act with the utmost good faith and loyalty." Allied Supply Co., Inc. v. Brown, 585 So. 2d 33, 37 (Ala. 1991) (citation omitted).

Bell Aerospace claims that the seven employees breached this duty by accessing, downloading, or copying company materials; the factual basis for this claim is

_____

6. See supra note 5.

essentially the same as the one for the ATSA claim.
However, because the ATSA "replace[s] common law tort
remedies for the misappropriation of trade secrets, while
leaving existing contract remedies or safeguards in place,"
Allied Supply Co., Inc., 585 So. 2d at 37, the company may
not pursue "both statutory and common law theories of
recovery for the ... alleged misappropriation of 'trade
secrets' or confidential documents."[7] Id. Therefore, Bell
Aerospace may not pursue its breach-of-fiduciary-duty claim
under a theory that is essentially the same as its ATSA
claim.

Bell Aerospace's second argument in support of its
breach-of-fiduciary-duty claim vaguely alludes to the
circumstances surrounding the seven former employees'
departure from the company within hours of one another and

---

7. The Alabama Supreme Court discusses the
misappropriation of confidential documents under the
umbrella of a breach-of-fiduciary-duty claim. Allied
Supply, Co., 585 So. 2d at 37 ("That count contained
allegations that the defendants had breached their
fiduciary duty by soliciting employees, customers, and
vendors of Allied while still employed by the corporation
and by misappropriating confidential documents").

starting at U.S. Aero some days later.  Bell Aerospace's argument appears to be similar to one asserted by the plaintiff in <u>Allied Supply Co.</u>: "Allied contended that the defendants had breached their fiduciary duties by resigning 'en masse,' without giving Allied the opportunity to hire and train personnel to replace them."  585 So. 2d at 35. This court rejects Bell Aerospace's argument for the same reason the Alabama Supreme Court rejected the same argument in <u>Allied Supply Co.</u>: "The defendants were employees at will.  They had no employment contracts with Allied and, most significantly, no noncompetition agreements.  ... Employees at will can terminate their employment, or can be terminated by their employer, at any time, with or without cause or justification."  <u>Id</u>.

Bell Aerospace's breach-of-fiduciary-duty claim must fail.

Bell Aerospace asserts a conversion claim against all the defendants. Under Alabama law, conversion is a wrongful taking, or a wrongful detention, or an illegal assumption of ownership, or an illegal use or misuse of someone else's property. Webb v. Dickson, 165 So. 2d 103, 105 (Ala. 1964). At its core, conversion is "the wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." Ott v. Fox, 362 So. 2d 836, 839 (Ala. 1978). To constitute conversion, the property deprivation need not be permanent. Dunn v. Williams, ___ So. 3d ___, ___, 2009 WL 2195822, at * 6 (Ala. Civ. App. 2009).[8]

------------------

8. Bell Aerospace also asserts a trespass-to-chattel claim against the defendants. Conversion and trespass to chattel are "closely similar" and differ only "in that the tort of conversion requires a more extensive interference with the plaintiff's possession." Poff v. Hayes, 763 So. 2d 234, 239 (Ala. 2000). The Restatement (Second) of Torts states that: "[M]inor and unimportant dispossessions, such as taking another man's hat by mistake and returning it within two minutes upon (continued...)

U.S. Aero, Matherly, Wilson, Taylor, Robison, and

Blaha: There is no evidence at all that Matherly, Wilson, Robison, and Blaha took or copied any Bell Aerospace property. As to Taylor, while Moore testified that she copied Taylor's personal Microsoft Outlook contacts onto a removable-media device, there is no evidence that these personal email contacts were Bell Aerospace's property. In other words, there is no other evidence in the record that Taylor wrongfully exercised any dominion over Bell Aerospace property. See Ott, 362 So. 2d at 839.

Bell Aerospace makes no argument demonstrating how U.S. Aero might be held liable under conversion for a Bell

_____

   8. (...continued)
discovery of the mistake, ...do not seriously interfere with the other's right of control, and so do not amount to conversion. In such a case the remedy of the action of trespass remains ...." Restatement (Second) of Torts, § 222 cmt. A. Because the distinction between conversion and trespass to chattel "is not material when the gist of the action consists of a wrongful taking and carrying away of the property of another," Roberson v. Harris, 233 So. 2d 96, 99 (Ala. Civ. App. 1970), and because the outcome here would be the same if the two were considered separately, this court has considered the two as one claim. See id.

Aerospace's employee's actions while still employed at Bell Aerospace. All of underlying events giving rise to the allegations that some employees wrongfully exercised dominion over property in exclusion or defiance of Bell Aerospace's rights occurred while the employees were still Bell Aerospace employees. There is also no evidence that the employees' actions were on behalf of U.S. Aero or with U.S. Aero's approval, knowledge, or encouragement or that any Bell Aerospace property taken when the employees resigned is in use at U.S. Aero.

The evidence does not support a conversion claim against U.S. Aero, Matherly, Wilson, Taylor, Robison, and Blaha.

<u>Thomas, Hall, Donahue, and Moore</u>: Bell Aerospace has presented substantial evidence of conversion against Thomas, Hall, Donahue, and Moore. Bell Aerospace's experts assert that a week before Thomas resigned, 1,325 files and folders were created on his computer. These files were subsequently marked as deleted. "This type of activity is

consistent with the creation of cached files during the process of burning CD and DVD ROMs and the automatic subsequent deletion of these files." Pl.'s Ex. 3 at 8. Furthermore, three files from Thomas's computer, while logged-in under Thomas's user-name, were burned to a compact disc in the days leading up to his resignation. One of these files included a set of Bell Aerospace proprietary work instructions. While Thomas denies taking or copying any files or documents, the expert report demonstrates that a substantial question of fact exists as to whether Thomas "exercise[d] ... dominion over property in exclusion or defiance of [Bell Aerospace's] rights" by allegedly copying the file. Ott, 362 So. 2d at 839.

Hall admits retaining Bell Aerospace files on his personal computer after he resigned from the company. Because these files were Bell Aerospace property, he was not entitled to keep them. While it appears that the only reason Hall failed to return the files after his resignation was because the computer containing them

crashed, permanently denying Bell Aerospace possession of its files, he still took them.

Donahue accidentally retained a removable-media device containing his Six-Sigma training materials, which is "an improvement methodology that is employed by various companies to eliminate defects and improve the efficiency of their operations." Durrance Dep. 76-9. While Donahue was entitled to maintain these materials at his home, he was required to return them upon his resignation, and, while he returned the materials, he still maintained temporary dominion over Bell Aerospace's property. In an action for conversion, as stated, the property depravation need not be permanent.

Moore retained Bell Aerospace files on her personal computer after she resigned from the company. While she did not access these files after leaving Bell Aerospace and while she returned all of the files to the company and deleted them from her computer soon after the filing of

this lawsuit, the conversion claim against her still stands for the same reason that it stands against Donahue.

The conversion claim against Thomas, Hall, Donahue, and Moore will therefore proceed to trial. However, it is apparent that, because Bell Aerospace has failed to present any evidence of actual losses as a result of the actions of these four former employees, the company's recoverable damages will be marginal or nominal. See Poff v. Hayes, 763 So. 2d at 239 ("Because [a] dispossession is always a trespass to the chattel, [it] subjects the actor to liability for at least nominal damages for the interference with the possession....") (quotation omitted). There is no evidence that Bell Aerospace has lost any business, profits, or sales to U.S. Aero since it began operating; that U.S. Aero or any of its employees has utilized Bell Aerospace's proprietary information or so-called trade secrets; or that U.S. Aero has directly competed with Bell Aerospace for business and contracts. Furthermore, Bell Aerospace does not contend that any of the documents

32

allegedly taken by any former employee are no longer accessible at the company or that any of its computers used by its former employees are damaged in any manner.

## H.

Bell Aerospace asserts its breach-of-contract claim against U.S. Aero and the seven employees who resigned from Bell Aerospace.[9] Bell Aerospace bases this claim on the allegation that the seven employees breached the confidentiality agreements it signed with them. These confidentiality agreements provide that they are to be "governed by Texas law," see Pl. Ex. 11, which requires that Bell Aerospace establish "(1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach."

---

9. See supra note 5.

<u>Harris v. American Protection Ins. Co.</u>, 158 S.W.3d 614, 622-23 (Tex. App.-Fort Worth 2005).[10]

The confidentiality agreements signed between Bell Aerospace and the seven employees required that they "not remove any Company records of any kind" and that "Company Proprietary Information ... be used only ... as required in the performance of [a] Company Job function." Pl. Ex. 11. Furthermore, "[u]pon separation from the Company," each employee "agree[d] not to use or disclose the Company's Proprietary Information that has been disclosed under [the] Agreement and to return all copies to the Company." <u>Id</u>.

Bell Aerospace does not argue with any specificity how any of its employees broke his or her individual confidentiality agreement; in fact, the section of the company's summary-judgment response addressing this claim does not mention a single employee's name. <u>See</u> Pl.'s Resp. Mot. Summ. J. 44-46. Nonetheless, as the court will

_____

10. Bell Aerospace incorrectly cites to Alabama law in its brief to support its breach-of-contract claim.

explain, while there is no evidence that U.S. Aero, Taylor, Donahue, Moore, Robison, and Blaha breached any confidentiality agreement, there appears to be a genuine question of material fact as to whether Thomas and Hall breached their agreements.

U.S. Aero, Taylor, Donahue, Moore, Robison, and Blaha: While, as discussed above, Moore recalls copying Taylor's personal Microsoft Outlook contacts onto a removable-media device, there is no evidence that Taylor copied any of Bell Aerospace's proprietary information or that he has accessed or used any the company's materials since his resignation. While Donahue accidently maintained his Six-Sigma training materials on a removable-media device after he resigned, he returned it when he discovered that he still had it; and, while Moore maintained Bell Aerospace materials on her personal computer following her resignation, she did not access these documents and returned them promptly. Donahue and Moore thus acted in full compliance with their confidentiality agreements' requirement that, "upon

separation from the Company," they must "return all copies to the Company." Pl.'s Ex. 11.  There is no evidence that Taylor, Donahue, and Moore violated their confidentiality agreements with Bell Aerospace.  The record is also void of any evidence that Robison and Blaha violated any confidentiality agreement.

Of course, U.S. Aero did not have any contract with Bell Aerospace.  There is also no evidence of any of Bell Aerospace's confidential or proprietary information present (or in use) at U.S. Aero.  The record will not support a finding of liability for breach of contract on the part of U.S. Aero.

Thomas and Hall: While Thomas denies taking or copying any Bell Aerospace proprietary materials, circumstantial evidence demonstrates that there is a question of fact as to whether he did, in fact, violate his confidentiality agreement.  In the days before he resigned, files from a removable-media device were accessed by someone using Thomas's user-login, and three files from Thomas's computer

were burned to a compact disc, including a set of Bell Aerospace proprietary work instructions. This evidence, viewed in a light most favorable to Bell Aerospace, supports the conclusion that Thomas removed Bell Aerospace records in violation of his confidentiality agreement.

Hall admits retaining Bell Aerospace documents on his personal computer after he resigned; he accessed these documents in order to create U.S. Aero's basic-materials-list spreadsheet. While Bell Aerospace concedes that a blank spreadsheet itself is not proprietary, it is unclear what other Bell Aerospace documents were maintained on Hall's computer. Hall testified in his deposition that he used his personal computer while working at Bell Aerospace and company documents were found on the computer but that the computer has since crashed and the documents are no longer accessible. Because Hall did not return these documents to Bell Aerospace upon his resignation, a substantial question of fact exists as to whether Hall violated his confidentiality agreement.

The breach-of-contract claim against Thomas and Hall will therefore proceed to trial. However, as with the conversion claim, it is apparent that, because Bell Aerospace has failed to present any evidence of actual losses as a result of the actions of these two former employees, the company's recoverable damages will be marginal or nominal. See <u>MBM Financial Corp. v. Woodlands Operating Co., L.P.</u>, 292 S.W.3d 660, 664 (Tex. 2009) ("The law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for the plaintiff, although, in the absence of proof of special loss, the damages would be nominal only.").

I.

Finally, Bell Aerospace charges all defendants with civil conspiracy, the elements for which require concerted action by two or more persons to achieve an unlawful purpose or lawful purpose by unlawful means, with actual

knowledge and intent to bring about the purpose. <u>Singleton v. Protective Life Ins. Co.</u>, 857 So. 2d 803, 814 (Ala. 2003). The Alabama Supreme Court has made clear that: "[A] conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. ... If the underlying cause of action is not viable, the conspiracy claim must also fail." <u>Allied Supply Co., Inc.</u>, 585 So. 2d at 36. Because of the nature of the concept of civil conspiracy, this observation applies not only to Bell Aerospace's state-law claims but to its federal claims as well. Bell Aerospace's conspiracy theory therefore fails as to its CFAA, ATSA, theft-of-intellectual-property, unjust-enrichment, fraud, and breach-of-fiduciary-duty claims.

However, with regard to the two substantive claims that have survived summary judgment so far (conversion against Thomas, Hall, Donahue, and Moore and breach of contract against Thomas and Hall), there are still two questions: whether, based on a theory of conspiracy, U.S.

Aero, Matherly, Wilson, Taylor, Robison, and Blaha can be held liable on the conversion claim; and whether, based on a theory of conspiracy, U.S. Aero, Taylor, Donahue, Moore, Robison, and Blaha can be held liable on the breach-of-contract claim.

Bell Aerospace attempts to show a conspiracy with general evidence that Matherly, Wilson, Thomas, Hall, Taylor, Donahue, Moore, Robison, and Blaha all met and talked at various times. For example, Matherly and Wilson entered into an agreement to start a new company, U.S. Aero; to that end, they were able to induce seven Bell Aerospace employees to join U.S. Aero as its first employees. Bell Aerospace then asks this court to infer that, in the process of building the new company, the seven employees, with encouragement from (or at least in agreement with) Matherly and Wilson, agreed to copy or take Bell Aerospace materials to aid the new company. Bell Aerospace points to a meeting that Matherly and Wilson had

with six of the seven employees a week before they resigned.

"It is long settled in the Eleventh Circuit and in other jurisdictions that evidence of parallel conduct alone is insufficient to show a conspiratorial agreement." Lynn v. Amoco Oil Co., 459 F. Supp. 2d 1175, 1181 n.9 (M.D. Ala. 2006) (Thompson, J.) (citations omitted). Thus, Bell Aerospace is required to offer evidence that tends to exclude the possibility that the conduct at issue (that is, for example, that the individual employees' meeting to discuss the formation of U.S. Aero) was merely parallel behavior. Bell Aerospace makes no such showing; it attempts to imply a conspiracy based upon mere parallel and independent and thus essentially innocent conduct. Indeed, each of the employees at the meeting with Matherly and Wilson insists that the meeting occurred to discuss only the formation of U.S. Aero and the roles that each of them would play within the new company; there is absolutely nothing in the record to refute this description of the

meeting.   Moreover, to the extent that Thomas, Hall, Donahue, and Moore engaged in conversion and that Thomas and Hall breached their confidentiality agreements, the record is void of any evidence that they acted in concert among themselves or with anyone else, that is, that they acted other than completely individually and independently. Bell Aerospace's evidence is far from sufficient to allow the conversion and breach-of-contract claims to go to trial against additional defendants based on a civil-conspiracy theory.

* * *

In conclusion, the defendants' motion for summary judgment will be denied as to Bell Aerospace's conversion claim against Thomas, Hall, Donahue, and Moore and its breach-of-contract claim against Thomas and Hall. These claims against these defendants will go to trial.   The motion will be granted in all other respects.

42

Accordingly, it is ORDERED as follows:

(1) Defendants U.S. Aero Services, Inc., Steve Matherly, Hartwell Wilson, Joe Thomas, Mike Hall, Sean Taylor, Ron Donahue, Timberly Moore, Mark Robison, and Rilda Blaha's motion for summary judgment (Doc. No. 110) is denied on (a) plaintiff Bell Aerospace Services, Inc.'s claim for conversion against defendants Thomas, Hall, Donahue, and Moore and (b) its claim for breach of contract against defendants Thomas and Hall. These claims will go to trial against these defendants.

(2) In all other respects, said motion is granted and judgment in entered in favor of defendants U.S. Aero Services, Inc., Matherly, Wilson, Thomas, Hall, Taylor, Donahue, Moore, Robison, and Blaha and against plaintiff Bell Aerospace Services, Inc., with plaintiff Bell Aerospace Services, Inc. taking nothing by its complaint.

(3) Because judgment has been entered in favor of
    defendants U.S. Aero Services, Inc., Matherly,
    Wilson, Taylor, Robison, and Blaha on all claims,
    these defendants are dismissed with prejudice.

DONE, this the 5th day of March 2010.

                        /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE